UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----

SHANNON MILLER,                           No. 2:10-cv-02723 MCE-DAD

      Plaintiff,

  v.                                      **MEMORANDUM AND ORDER**

MAYERS MEMORIAL HOSPITAL;
LES DEVIES, D.O.; UNITED
STATES OF AMERICA,

      Defendants.

----oo0oo----

    Presently before the Court is a Motion to Dismiss brought by Defendant the United States of America ("United States" or "Government") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[1]  While that motion, (made on grounds that Plaintiff's claim against the United States was not timely filed) was pending, Plaintiff filed a Motion to Decertify Thomas Watson M.D. as a federal employee.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

1  Plaintiff claims that because Dr. Watson should not be considered
2  a governmental employee for purposes of this action, the
3  requirements for presenting claims against the government are
4  irrelevant.  Plaintiff also moved to remand the action to state
5  court, where it originated, on grounds that no cognizable federal
6  claim is present.  In response to those two motions filed by
7  Plaintiff, the Court continued the United States' motion to
8  dismiss so that all three motions could be heard concurrently.
9  As set forth below, Plaintiff's Motions for Decertification and
10 for Remand will be denied.  The United States' Motion to Dismiss
11 will be granted.[2]

**BACKGROUND**

15     In this medical malpractice action, Plaintiff Shannon Miller
16 ("Plaintiff") seeks redress for a perforated colon she claims to
17 have sustained while undergoing surgery on or about April 2, 2008
18 for a tubal ligation.  Plaintiff further attributes a subsequent
19 infection to improper treatment following the perforation she
20 suffered.  Plaintiff's lawsuit, initially filed in the Superior
21 Court of the State of California for the County of Shasta, named
22 Mayers Memorial Hospital ("Mayers" or "Hospital"), the facility
23 where the tubal ligation was performed, Dr. Watson, the surgeon
24 who performed the procedure, and Dr. Leo Devies (Dr. Watson's
25 first assistant), as Defendants.

---

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

2

1 The United States subsequently substituted as a Defendant on
2 Watson's behalf upon a certification from the United States
3 Attorney's Office that Watson was acting within the scope of his
4 employment with the United States when performing Plaintiff's
5 surgery.  Concurrently with that certification, the United States
6 removed the action, pursuant to 28 U.S.C. § 2679(d), on June 15,
7 2009.  The resulting case was assigned a case number of 2:09-cv-
8 01687-MCE-KJM.

9    The United States moved to dismiss Plaintiff's lawsuit a
10 week after it was removed for lack of subject matter jurisdiction
11 under Rule 12(b)(1), claiming that Plaintiff had not exhausted
12 administrative remedies under the Federal Tort Claims Act,
13 28 U.S.C. § 1346 et seq. ("FTCA") against Watson, as a government
14 employee, and that consequently Plaintiff could not maintain his
15 action against the United States.  By Memorandum and Order filed
16 September 18, 2009, the Court granted the United States' motion
17 and remanded the case back to Shasta County where it had
18 originally been commenced.

19    On October 2, 2009, the United States Department of Health
20 and Human Services ("HHS") denied Plaintiff's governmental tort
21 claim, which she claims she filed "in an abundance of caution" on
22 April 2, 2009, the day after her lawsuit was initially filed in
23 state court.  See Pl.'s Opp'n to Mot. to Dismiss, p. 2, n.1
24 Nonetheless, although this Court had previously dismissed the
25 United States from the action on September 18, 2009 for failure
26 to exhaust her administrative claims, it is undisputed that
27 Plaintiff thereafter took no action to refile any action against
28 the United States.

3

1  Instead, Plaintiff simply took the position that Dr. Watson
2  remained a viable individual defendant despite his certification
3  as a federal employee and the United States' corresponding party
4  substitution in his place.
5      When Plaintiff continued to pursue Dr. Watson as a defendant
6  in state court, and after she attempted to take his default, the
7  United States re-removed the case to this Court on October 7,
8  2010.  At that time the present case number, 2:10-cv-02723-MCE-
9  DAD, was assigned.
10     The United States' initial certification of Dr. Watson as a
11 federal employee was made on grounds that he was employed by the
12 Mountain Valleys Health Centers ("MVHC"), a federally supported
13 health center.  Pointing to a contract between MVHC and Mayers
14 which provided for use of the Hospital for the provision of
15 emergency services to MVHC patients, Plaintiff contends that
16 because her tubal ligation was not an emergency procedure and
17 because the emergency services agreement was the only contract
18 that existed between Mayers and Mountain Valleys, Dr. Watson
19 could not have been operating in his capacity as an MVHC employee
20 when he performed an elective tubal ligation on Plaintiff at the
21 Hospital.  Plaintiff instead alleges that Watson was acting as an
22 "independent contractor" for Mayers as opposed to MVHC's
23 employee.  Id. at 6:24-26.
24     The United States has pointed to a number of facts which, it
25 contends, illuminate the unavailability of Plaintiff's argument
26 in this regard.  First, according to Dave Jones, the Chief
27 Executive Officer for MVHC, emergency room treatment is not the
28 only connection MVHC has with Mayers.  As Jones explains:

4

> "Separate and apart from the Emergency Services Agreement, MVHC doctors, including Dr. Watson, are granted general privileges at Mayers so they may provide medical services and perform procedures for MVHC patients using Mayers' physical facilities. Privileges are not granted to MVHC physicians by way of contract, but instead are granted by Mayers as part of a confidential review process. MVHC bills its patients for all services rendered and procedures performed by its physicians at Mayers pursuant to these privileges, including the April 3, 2008 tubal ligation surgery performed by Dr. Watson for [Plaintiff] at Mayers."

Decl. of Dave Jones, ¶ 8.  Indeed, as Jones also points out, because Mayers is located in a very rural area, approximately 90 to 95 percent of the doctors who use its hospital facilities are in fact MVHC employees.  Jones Decl., ¶ 4.  Significantly, while Dr. Watson is employed by MVHC (which provides all his salary, compensation and benefits) he currently serves as Mayer's Chief of Medical Staff and remains an active staff member of the Hospital.  Id. at ¶ 6.

With respect to the care he provided to Plaintiff, the United States has provided evidence that she has been an MVHC patient since 2004, that Dr. Watson followed her throughout her pregnancy in 2007 and 2008, and that Dr. Watson in fact delivered her baby at Mayers on April 2, 2008, the day before he performed Plaintiff's tubal ligation, also at the Hospital.  Watson Decl. ¶¶ 10-11; Jones Decl., ¶ 9.  According to the United States, the fact that both the birth and Plaintiff's subsequent tubal ligation were performed at the Hospital is not surprising since MVHC is a clinical outpatient facility only.  Any deliveries and surgical procedures on MVHC patients consequently have to be performed at hospitals such as Mayers.  Jones Decl., ¶ 9.
///

1  Dr. Watson's clinical privileges at Mayers, which included
2  privileges in Family Medicine, permitted him to perform the tubal
3  ligation in question.  Watson Decl., ¶¶ 6, 12.
4      Billing for the services performed also points to MVHC as
5  the responsible party.  According to Sheral Thorlaksson, MVHC's
6  Chief Operating Officer, MVHC billed Medi-Cal for Plaintiff's
7  April 3, 2008 surgery performed by Dr. Watson, and Medi-Cal paid
8  for the procedure.  Thorlaksson Decl., ¶¶ 7-11.  Dr. Watson does
9  not bill privately for his services, and did not bill Plaintiff
10 or any third-party payer for any of the services he provided to
11 her, including the tubal ligation.  Watson Decl., ¶ 13.
12 Dr. Watson's declaration makes it clear that the only payment he
13 received for the subject April 3, 2008 procedure was pursuant to
14 his regular compensation as an MVHC employee.  Id.
15     Plaintiff filed no reply memorandum to these assertions, as
16 contained within the materials filed in opposition to Plaintiff's
17 motions.  Consequently the Government's factual allegations in
18 this regard are essentially uncontroverted.

## STANDARD

**A.   Certification of a Federal Employee**

Certification by the government that a federal employee was acting in the scope of employment at the time of any given incident constitutes prima facie evidence as to that course and scope and is accordingly conclusive unless challenged.  See Pauly v. U.S. Dept. Of Agric., 348 F.3d 1143, 1151 (9th Cir. 2003); Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993).

It follows that a plaintiff can seek judicial review of a scope of employment determination like the United States Attorney's Office certification made in this matter. Osborn v. Haley, 549 U.S. 225, 230 (2007). In mounting any such challenge, however, the party seeking review must rebut the presumption of federal employment arising from the certification, and he or she "bears the burden of presenting evidence and disproving the... certification by a preponderance of the evidence." Billings v. United States, 57 F.3d 797, 800 (9th Cir. 1995). Moreover, because such challenges bear on the immunity to suit of a federal employee for claims arising out of their employment, they "should be decided at the earliest opportunity." Osborn, 549 U.S. at 252-53.

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Courts are presumptively without jurisdiction over civil actions, and the burden of establishing the contrary rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994). Lack of subject matter jurisdiction is never waived and may be raised by either party or the court at any time. Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d. 593, 594-95 (9th Cir. 1996). Lack of subject matter jurisdiction may even be raised by the district court sua sponte: "Nothing is to be more jealously guarded by a court than its jurisdiction." In re Mooney, 841 F.2d. 1003, 1006 (9th Cir. 1988).

///

1  In moving to dismiss for lack of subject matter jurisdiction
2 pursuant to Rule 12(b)(1), the challenging party may either make
3 a facial attack on the allegations of jurisdiction contained in
4 the complaint or can instead take issue with subject matter
5 jurisdiction on a factual basis.  Thornhill Publ'g Co. v. Gen.
6 Tel. & Elect. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen
7 v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir.
8 1977).
9  If the motion constitutes a facial attack, the Court must
10 consider the factual allegations of the complaint to be true.
11 Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981);
12 Mortensen, 549 F.2d at 891.  If the motion constitutes a factual
13 attack, however, like the present motion (which argues that any
14 claims against the United States are now time-barred), "no
15 presumptive truthfulness attaches to plaintiff's allegations, and
16 the existence of disputed material facts will not preclude the
17 trial court from evaluating for itself the merits of
18 jurisdictional claims."  Thornhill, 594 F.2d at 733 (quoting
19 Mortensen, 549 F.2d at 891); see also White v. Lee, 227 F.3d
20 1214, 1242 (9th Cir. 2000).  "In resolving a factual attack on
21 jurisdiction, the district court may review evidence beyond the
22 complaint without converting the motion to dismiss into a motion
23 for summary judgment."  Safe Air v. Meyer, 373 F.3d 1035, 1039
24 (9th Cir. 2004).
25 ///
26 ///
27 ///
28 ///

8

# ANALYSIS

Plaintiff argues that because she did not enter Mayers Memorial Hospital through the emergency room, the subsequent surgery performed by Dr. Watson could necessarily not have been within the course and scope of his employment with MVHC because the only contract between Mayers and MVHC was for the provision of emergency services.

Contrary to Plaintiff's logic, the existence of a contract for emergency medical services does not per se disqualify any other service performed at the Hospital from being made under the auspices of the MVHC.  In and of itself, that argument is insufficient to overcome the presumption in favor of federal employee status that results from the United States Attorney's certification in a case like this one -- a presumption that Plaintiff has the burden to rebut by a preponderance of the evidence.  Billings v. United States, 57 F.3d at 800.

The United States has also presented evidence, however, that all the services provided by Dr. Watson to the Plaintiff -- including his care over the course of her pregnancy, the delivery itself and the Plaintiff's tubal ligation the following day -- were all performed within the scope of his employment with MVHC. The United States has further produced evidence that all of Dr. Watson's compensation is paid by the MVHC, a federally funded health clinic, and that Dr. Watson's charges incurred for the particular tubal ligation in question were presented to and paid by Medi-Cal through billings generated by MVHC (with no billings submitted by Dr. Watson or any other third party for the procedure).

As already stated above, Plaintiff filed no response to these factual assertions, and for purposes of the motions now before the Court they remain uncontroverted.

Plaintiff's contention that Dr. Watson was not acting as an MVHC employee at the time of her tubal ligation is the foundation of both the two motions she herself has filed (for decertification of Watson's status as a federal employee and for remand to state court on grounds that absent such status this Court lacks jurisdiction) and the opposition she submitted to the United States' motion to dismiss for failure to adhere to the deadlines attaching to a federal claim.  As Plaintiff suggests in the motion to decertify itself, the propriety of certification is, in essence, determinative of all three motions: "Once Dr. Watson is decertified, Plaintiff's motion to remand should be granted, and Defendant's motion to dismiss should be denied." Pl.'s Mot. to Decertify, 10:11-12.  Plaintiff describes the "bottom line" for all three motions in an identical fashion as follows:

> "The bottom line here is that the federal court does not have and never had subject matter jurisdiction over plaintiff's claims against Dr. Watson, and not because plaintiff failed to exhaust her administrative "remedies", but because Watson was not acting in the course and scope of his federal employment when he negligently perforated plaintiff's colon."

See Pl's Mot. to Decertify, 7:16-19; Pl.'s Mot. to Remand, 6:7-10; Pl.'s Opp. to Mot. to Dismiss, 6:9-12.

The Court rejects Plaintiff's "bottom line" argument that she has demonstrated the impropriety of the United States' certification of Dr. Watson's status as a federal employee.

///

10

1  Since that rejection removes the very underpinning for
2  Plaintiff's decertification request, as well as for her request
3  that once decertified, the matter should be remanded to state
4  court, both Plaintiff's motions in that regard necessarily fail.[3]
5  Further, inasmuch as the only opposition Plaintiff makes to the
6  United States' motion to dismiss rests with the Government's
7  allegedly "erroneous premise" that pursuant to Dr. Watson's
8  certification the United States is the proper party against whom
9  the action should be proceeding, the fact that the Court
10 disagrees operates eviscerate Plaintiff's opposition to the
11 motion to dismiss.
12     The premise upon which the United States moves for dismissal
13 is sound.  The United States remains the proper party to this
14 litigation, as opposed to Dr. Watson individually, given the
15 certification of federal employment it issued and its subsequent
16 substitution as a party defendant in place of Dr. Watson.
17 ///
18 ///
19 ///
20 ///

---

[3] Although the Court finds that Plaintiff's motion to decertify fails on the merits, it should also be noted that the predecessor case (2:09-cv-01687-MCE-KJM) to the instant matter was dismissed by Memorandum and Order filed September 18, 2009, on grounds that Watson had been certified as a federal employee and that consequently Plaintiff could not maintain an action against the United States as substituting party without complying with applicable FTCA requirements.  To the extent that Plaintiff disagreed with the propriety of that certification and the resulting dismissal based thereon, she should have appealed from the Court's dismissal, or sought reconsideration of its ruling, but failed to do so.  As such, her present challenge to Dr. Watson's certification is both procedurally untimely as well as substantively flawed.

11

1  Inexplicably, while Plaintiff submitted a tort claim to the
2  United States on April 2, 2009 (the day after Plaintiff's state
3  court lawsuit was filed), and although the United States, through
4  its Department of Health and Human Services, denied that claim on
5  October 2, 2009 (after this matter was remanded to the state
6  court the first time for failure to exhaust requisite
7  administrative remedies), Plaintiff never took any action to sue
8  the United States in the wake of its administrative denial.
9       As the United States points out, its October 2, 2009 denial
10 letter (Ex. D to the Motion to Dismiss) specifically informed
11 Plaintiff's counsel that, if dissatisfied with its denial of
12 Plaintiff's administrative claim, Plaintiff could "file suit
13 against the United States in the appropriate federal district
14 court within six (6) months from the date of mailing of this
15 determination" pursuant to 28 U.S.C. § 2401(b).
16      Section 2401(b) provides in pertinent part that "a tort
17 claim against the United States shall be forever barred... unless
18 action is begun within six months after the date of mailing, by
19 certified or registered mail, of notice or final denial of the
20 claim by the agency to which it was presented."  Given the
21 October 2, 2009 denial, that meant that any lawsuit here by
22 Plaintiffs against the United States had to be commenced by
23 April 2, 2010.  It is undisputed that no such action was filed,
24 with Plaintiff simply taking the position that she could continue
25 to pursue Dr. Watson directly in state court because he was not
26 acting within the course and scope of his employment with the
27 MVHC at the time of her tubal ligation.  That argument, however,
28 has already been rejected by this Court.

12

1 As the Ninth Circuit recently pointed out in <u>Marley v.
2 United States,</u> 567 F.3d 1030, 1038 (9th Cir. 2009), "the six-
3 month statute of limitations in § 2401(b) is jurisdictional
4 and...failure to file a claim within that time period deprives
5 the federal courts of jurisdiction." The <u>Marley</u> court explained
6 that the waiver of sovereign immunity represented by the FTCA is
7 limited and must accordingly be "strictly observed". <u>Id.</u> at
8 1034, citing <u>Block v. North Dakota,</u> 461 U.S. 273, 287 (1983).
9 Plaintiff's failure to institute suit within the time
10 constraints of the FTCA following the Government's rejection of
11 her administrative claim consequently mandates that this matter
12 be dismissed with respect to the United States.

**CONCLUSION**

16 For the foregoing reasons, the Government's Motion to
17 Dismiss (ECF No. 6) is GRANTED. Having properly certified
18 Dr. Thomas Watson as a federal employee acting within the scope
19 of his employment at the time of the tubal ligation giving rise
20 to this lawsuit, and given Plaintiff's failure to properly
21 commence an action within six (6) months following the United
22 States' denial of Plaintiff's administrative claim as required by
23 28 U.S.C. § 2401(b), any claims against the United States or
24 Dr. Watson as a result of the subject incident are forever
25 barred. The remainder of the case is hereby remanded to the
26 Superior Court of the State of California in and for the County
27 of Shasta for further disposition.
28 ///

13

1    Plaintiff's Motion to Decertify Thomas Watson, M.D., as a
2 Federal Employee (ECF No. 13), as well as Plaintiff's
3 corresponding Motion to Remand (ECF No. 12) are DENIED.
4    IT IS SO ORDERED.

Dated: March 31, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE